UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

OLENE GARNER                                                                      PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:12-cv-398-CWR-FKB

MICHAEL J. ASTRUE, COMMISSIONER,
UNITED STATES SOCIAL SECURITY ADMINISTRATION                  DEFENDANT

## REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Plaintiff's Motion for Summary Judgment [Docket No. 10] and Defendant's Motion for an Order Affirming the Decision of the Commissioner [Docket No. 15].

## HISTORY

Plaintiff's applications for disability insurance benefits and supplemental security disability benefits were denied initially and upon reconsideration, as well as denied by an Administrative Law Judge (ALJ) on July 1, 2011, and the Appeals Council on April 7, 2012. Docket No. 9-2 at 5-7. Plaintiff was 32 years old at the time of the hearing before the ALJ [Docket No. 9-2 at 20], making her a "younger individual" for social security purposes, and she possesses a GED. Docket No. 9-6 at 25. Before claiming to be disabled, Plaintiff had worked as a cashier, poultry worker, fast food worker, wire harness assembler and small parts assembler. Docket No. 9-2 at 52.

Following the requisite five step analysis, the ALJ found that Plaintiff was not engaged in substantial activity, and has severe impairments of post traumatic stress disorder, anxiety, and status post-degenerative disc disease. The ALJ concluded that Plaintiff's impairments are not as

1

severe as any impairment listed as presumptively disabling in the applicable regulations. The ALJ then concluded that Plaintiff is able to perform a limited range of medium work, though she cannot perform her past relevant work. The ALJ determined that Plaintiff is not disabled because she can perform other work which exists in the economy in significant numbers. *Id.* at 15-21.

The Appeals Council modified the ALJ's decision by finding that Plaintiff has the residual functional capacity for light work, not medium work. Docket No. 9-2 at 6. The Appeals Council concluded that Plaintiff is able to perform her past work as a small parts assembler. *Id.* Accordingly, the Appeals Council affirmed the ALJ's decision that Plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

When considering social security appeals, this Court's review is limited to determining whether substantial evidence supports the findings made by the Social Security Administration and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Adler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007).

## THE ISSUES PRESENTED

*A. PRESUMPTIVE DISABILITY*

Plaintiff first contends that her back condition renders her presumptively disabled, meaning that she has a "listed impairment." 20 C.F.R. Part 404, Subpart B, Appx. 1. The Listing of Impairments describes those conditions the Social Security Administration considers severe enough to render a person unable to work. 20 C.F.R. § 404.1525. With respect to the back, the ALJ found that Plaintiff has the severe impairment of "status post degenerative disc disease." Docket No. 9-2 at 15. Plaintiff argues that her medical records establish that her back

condition meets the spinal disorder listing's criteria and therefore, she is presumptively disabled.

Plaintiff had a microdiskectomy at L4-5, left side, on February 2, 2011. Docket No. 9-7 at 137. Plaintiff continued to complain to Dr. Collum, her treating physician, of pain after the surgery, and he noted that she was "very, very stiff in all of her joints." *Id.* at 211. An MRI on February 13, 2011, showed recurrent disc protrusion at L4-5, left side, resulting in "moderately severe spinal canal stenosis at that level." *Id.* at 188. A subsequent MRI, performed April 14, 2011, showed:

> L4-5 disc desiccation, annular fissure and small posterior disc bulge.... L5-S1 disc desiccation and a broad posterior left paramedian left lateral and foraminal disc extrusion....
> ...extensive fibrosis seen in the left posterior and lateral recesses extending into the left paramedian epidural space and neural foramen. .... L4-5 degenerative inflate changes....

*Id.* at 217. Plaintiff argues that because of Dr. Collum's findings from before the surgery, together with the surgery, the post-surgery MRI reports and her continued complaints of pain, the Commissioner should have called a medical expert to evaluate Plaintiff's back impairment.

Plaintiff must demonstrate that her condition meets a listed impairment and the listing for spinal impairments requires that she demonstrate the following: a spinal disorder that compromises a nerve root or her spinal cord, and either a) nerve root compression with neuro-anatomically distributed pain, limited spinal motion, motor loss, sensory or reflex loss, and positive straight-leg raising tests; b) spinal arachnoiditis; or c) lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04 (A)-(C). The listing reads as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or

the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The Commissioner asserts that the medical evidence establishes that Plaintiff's impairment does not meet the foregoing criteria. Specifically, Dr. Cullom's records indicate that when he examined Plaintiff the day after her surgery, her straight leg raise test was negative and her strength was full. Docket No. 9-7 at 137. Dr. Danurius Williams examined Plaintiff on February 13, 2011, and noted that she had no motor or sensory deficits. *Id.* at 179. Again in May, 2011, Dr. Cullom reported that Plaintiff's sensation was intact, muscle testing was full and tone was normal. *Id*. at 208.

Respondent also points out that though Plaintiff continued to complain of back pain after her surgery, Dr. Cullom noted that Plaintiff had a "pain relief behavior component" and that he "watched her walk out of the office and she definitely walked a heck of a lot better outside in the parking lot than she did in the office." *Id.* at 211. In rebuttal, Plaintiff relies on Dr. Cullom's notes prior to the surgery. However, post operative records considered by the Appeals Council support the Commissioner's determination that Plaintiff does not meet a listed impairment.

4

Docket No. 9-2 at 5. Plaintiff has not submitted post-operative medical records to support a finding that the requirements for the suggested listed impairment have been met. Plaintiff instead argues that the Commissioner failed to analyze the records properly and evaluate Plaintiff's impairments. Again, this Court's task on review is merely to determine whether substantial evidence supports the Commissioner's findings. The Court concludes that there is substantial record evidence that at the time of the decision, Plaintiff did not have a spinal disorder that met or exceeded the listed criteria.

### B. OBESITY

Plaintiff is 5 feet, 8 inches tall and weighed 221 pounds in January, 2011. Docket No. 9-2 at 18. She argues that the Commissioner failed to take her obesity into account as required by Social Security Ruling 02-1p. Plaintiff's BMI based on the aforementioned height and weight (33.7) puts her in the Level I category referenced in SSR 02-1. However, the ALJ did consider evidence regarding Plaintiff's weight and height [Docket No. 9-2 at 17-19] and the Appeals Council adopted the ALJ's statements regarding the evidence. Docket No. 9-2 at 5. Moreover, the ALJ considered conditions possibly associated with obesity, including diabetes and high cholesterol. Docket No. 9-2 at 18. Plaintiff, though, has not pointed to any manner in which her obesity limits her, aside from mentioning that falling down is more painful due to her size.

### C. RESIDUAL FUNCTIONAL CAPACITY

Before step 4 of the five step analysis, the Commissioner must address Residual Functional Capacity (RFC), or a person's abilities and restrictions in light of his or her impairments. In this case, Dr. Saddler, a state agency examiner, provided the RFC, which Plaintiff contends is faulty inasmuch as Dr. Saddler, who examined Plaintiff on December 18,

2012, did not consider Dr. Cullom's reports, neither pre-operative nor post-operative. However, Dr. Saddler, who opined that Plaintiff could perform light work, did consider lumbar disc disease, but Plaintiff had no motor deficits. Docket No. 9-7 at 115. Post operative reports submitted still do not reference any motor deficits. The ALJ did consider Dr. Collum's reports through May 10, 2011. Docket No. 9-2 at 18.

The ALJ concluded that Plaintiff retains the capacity to perform a limited range of medium work. The Appeals Council, however, concluded that Plaintiff can perform only light work. Plaintiff argues that both conclusions are merely guesses and that no medical source statement supports the Commissioner's determination of RFC. Respondent correctly argues that no medical source statement is required if the RFC determination is supported by substantial evidence. *See, e.g., Bryant v. Astrue*, No. 5:11cv71-DCB-RHW, 2012 WL 4339096, at *3 (S.D. Miss. Sept. 20, 2012). It is the Commissioner's job to assess RFC. 20 C.F.R. § 404.914; 20 C.F.R. § 404.946; 20 C.F.R. § 404.1527. Moreover, the ALJ specifically considered restrictions, or lack thereof, placed on Plaintiff by her treating physician. Therefore, there was in fact a medical source after the operation.

The ALJ further explained his RFC determination:

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of "not disabled." Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision). Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor.

6

*Id.* at 19. The evidence as to Plaintiff's post-operative back pain has been discussed *supra,* and Dr. Saddler's opinion otherwise supports the RFC determination. Dr. Saddler was the state agency medical consultant and his opinion is not contradicted by any treating physician's reports from after the surgery.

### D. CREDIBILITY

Next, Plaintiff argues that the Commissioner erred in partially discounting her complaints of pain. Neither the ALJ nor the Appeals Council found Plaintiff's subjective complaints of pain entirely credible. Plaintiff contends that the Commissioner failed to specify which complaints were not fully credible and why. The ALJ opined:

> The description of the symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive. The claimant did undergo surgery for the alleged impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.

*Id.* The Commissioner's decision with respect to credibility is entitled to "considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). "Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence." *Id.* The ALJ did not apply the incorrect legal standard and the record is replete with evidence to support his conclusion regarding credibility. *See, e.g.*, Docket No. 9-7 at 211.

### E. CAN PLAINTIFF RETURN TO HER PAST RELEVANT WORK

Plaintiff's final argument is that Defendant failed to establish that Plaintiff can return to

her past relevant work. During the hearing before the ALJ, a vocational expert testified, at first blush seemingly inconsistently, in this regard. Docket No. 9-2 at 53-54. The ALJ gave the expert Plaintiff's age, educational background, a light exertional level and the other restrictions determined applicable by the ALJ based on the record, and then asked whether Plaintiff could return to her past work. The expert said he "didn't think so," even though he had described one of Plaintiff's past jobs as a small parts assembler. Then the expert went on to testify in response to the very next question, which was whether a person with Plaintiff's restrictions could perform any jobs, that there are jobs in the economy, including those as a small parts assembler, that Plaintiff could perform. *Id.* The ALJ concluded that Plaintiff is capable of performing medium work, "except she can stand periodically through the day; she is limited to routine nature work; her interaction with others should be casual and routine in nature; she should have limited contact with the public." *Id.* at 19. The ALJ stated that "[t]he claimant has past relevant work as a cashier (light/SVP 2), poultry worker (light/SVP 2), fast food worker (light/SVP 2), wire harness assembler (light/SVP 3) and small parts assembler (light/SVP 3). Accordingly, the claimant is unable to perform her past relevant work." *Id.* Proceeding to Step 5, the ALJ determined that jobs exist in significant numbers in the economy that Plaintiff can perform - three jobs classified as light work, at least one category of which Plaintiff had performed in the past. *Id.* at 20-21.

Defendant's conclusion that Plaintiff can return to past work is supported by substantial evidence. Dr. Sadler provided the RFC and determined that Plaintiff could perform a full range of light work. Docket Nos. 9-7 at 115 and 9-2 at 18. The Appeals Council even adopted the limitations referenced by the ALJ before reaching its conclusion that Plaintiff can return to her

8

past work as a small parts assembler. As noted *supra*, before the ALJ, the vocational expert testified that Plaintiff could perform light work such as bench assembler and small parts assembler. Docket No. 9-2 at 20. Plaintiff had described her past work as a small parts assembler as sedentary. *Id.* at 52. Therefore, the vocational rehabilitation expert's testimony that she could not return to her past relevant work as described was not actually inconsistent with his testimony that she can perform work as a small parts assembler as that position is generally categorized as "light." When asking the hypothetical about available jobs, the ALJ asked whether Plaintiff could perform light work if she could stand periodically. Docket No. 9-2 at 53-54. A vocational expert may testify as to whether a claimant can perform past work as it was performed or as it is generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 416.906 (b)(2). Accordingly, the Commissioner's ultimate determination that Plaintiff can perform her past work as a small parts assembler is supported by substantial evidence, as is an alternative conclusion that she can perform other work available in the economy given her restrictions.

## CONCLUSION

Accordingly, for the reasons stated above, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for an Order Affirming the Decision of the Commissioner be granted.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    Respectfully submitted, this the 21st day of May, 2013.

                                          /s/ F. Keith Ball
                                          UNITED STATES MAGISTRATE JUDGE